UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

CORA H. FERRELL,

Plaintiff,

v.

JO ANNE B. BARNHART, Commissioner of Social Security

Defendant.

05-CV-0311T

**DECISION and ORDER**

## INTRODUCTION

Plaintiff Cora H. Ferrell ("Ferrell" or "Plaintiff") brings this action pursuant to Titles II and XVI of the Social Security Act, claiming that the Commissioner of Social Security ("Commissioner" or "Defendant") improperly denied her application for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") payments.[1] Specifically, Plaintiff alleges that the decision of the Administrative Law Judge ("ALJ") who heard her case was erroneous because it was not supported by substantial evidence contained in the record.

The Commissioner and Plaintiff each move for judgment on the pleadings. The Commissioner claims that the ALJ's decision was supported by substantial evidence in the record whereas Plaintiff claims the opposite. Because this court finds that the

[1] This case was transferred to the undersigned by the Honorable Richard J. Arcara, Chief Judge, United States District Court for the Western District of New York by Order dated April 5, 2007.

Commissioner's decision was supported by substantial evidence, judgment on the pleadings is hereby granted for Defendant.

**BACKGROUND**

On November 30, 2002, Plaintiff Cora H. Ferrell applied for DIB and SSI benefits claiming that she had become disabled due to a stroke on February 11, 2002. Ferrell was 49 years-old with a high school education at the time of her application.

The application was initially denied by the Social Security Administration ("SSA") and Plaintiff thereafter requested an administrative hearing which was held before ALJ Barry Anderson on May 10, 2004. The ALJ found Ferrell not to be disabled on May 27, 2004. Plaintiff appealed the ALJ's decision to the Social Security Appeals Council which denied her request for review on March 3, 2005. On May 4th of that year Plaintiff filed this action.

**DISCUSSION**

**I. JURISDICTION AND SCOPE OF REVIEW**

Title 42, Section 405(g) of the United States Code grants jurisdiction to Federal District Courts to hear claims based on the denial of Social Security benefits. Mathews v. Eldridge, 424 U.S. 319, 320 (1976). Additionally, Section 405(g) directs that when considering such a claim, the court must accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record. See Bubnis v. Apfel, 150 F.3d 177, 181 (2d Cir. 1998); see also Williams v. Comm'r of Soc. Sec., No. 06-2019-cv, 2007 U.S. App. LEXIS 9396, at *3 (2d Cir. Apr. 24, 2007). Substantial evidence is defined as

"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Metropolitan Stevedore Co. v. Rambo, 521 U.S. 121, 149 (1997) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). Section 405(g) thus limits this court's scope of review to two inquiries: (I) whether the Commissioner's conclusions are supported by substantial evidence in the record as a whole, and (ii) whether the Commissioner's conclusions are based upon an erroneous legal standard. Green-Younger v. Barnhart, 335 F.3d 99, 105-06 (2d Cir. 2003); see also Wagner v. Secretary of Health & Human Serv., 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

Plaintiff and Defendant both move for judgment on the pleadings pursuant to 42 U.S.C. 405(g) as well as Rule 12© of the Federal Rules of Civil Procedure. Section 405(g) states that the District Court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C.S. § 405(g) (2007). Under Rule 12©, judgment on the pleadings may be granted where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings. Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639, 642 (2d Cir. 1988). Because this court determines that the findings of

the Commissioner are supported by substantial evidence in the record, judgment on the pleadings is hereby granted for Defendant.

## II. THE COMMISSIONER'S DECISION TO DENY PLAINTIFF BENEFITS IS SUPPORTED BY SUBSTANTIAL EVIDENCE IN THE RECORD.

### A. Standard for Entitlement to Disability Benefits

Under the Social Security Act, a disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months ...." 42 U.S.C. §§ 423(d)(1)(A) (concerning Old-Age, Survivors', and Disability Insurance ("OASDI")); 42 U.S.C. § 1382c(a)(3)(A) (2004) (concerning SSI payments). An individual will only be considered "under a disability" if her impairment is so severe that she is both unable to do her previous work *and* unable to engage in any other kind of substantial gainful work that exists in the national economy. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

"Substantial gainful work" is defined as "work that exists in significant numbers either in the region where the individual lives or in several regions of the country." Id. Work may be considered "substantial" even if it is done on a part-time basis, if less money is earned, or if work responsibilities are lessened from previous employment. 20 C.F.R. § 404.1572(a) (OASDI); 20 C.F.R. § 416.972(a) (SSI). Work may be considered "gainful" if it is the kind of work usually done for pay or profit, whether or not a profit is realized. §§ 404.1572(b) and 416.972(b). Furthermore,

"substantial gainful work" is considered available to an individual regardless of whether such work exists in her immediate area, whether a specific job vacancy exists for her, or whether she would be hired if she were to apply for work. 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B). As discussed in section II-B of this decision, the ALJ's finding that Plaintiff could engage in substantial gainful work is supported by substantial evidence in the record as a whole.

1. The SSA's Five-Step Disability Evaluation Process

When a claimant requests a Social Security disability hearing before an Administrative Law Judge, SSA regulations require the ALJ to perform the following five-step sequential evaluation:

(i) if the claimant is performing substantial gainful work, she is not disabled;

(ii) if the claimant is not performing substantial gainful work, her impairment(s) must be "severe" before she can be found to be disabled;

(iii) if the claimant is not performing substantial gainful work and has a "severe" impairment (or impairments) that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment (or impairments) meets or medically equals a listed impairment contained in Appendix 1, Subpart P, Regulation No. 4, the claimant is presumed disabled without further inquiry

(iv) if the claimant's impairment (or impairments) does not prevent her from doing her past relevant work, she is not disabled;

(v) even if the claimant's impairment or impairments prevent her from performing her past relevant work, if other work exists in significant numbers in the national economy that accommodates her residual functional capacity and vocational factors, she is not disabled.

20 C.F.R. §§ 404.1520(a)(4)(I)-(v) and 416.920(a)(4)(I)-(v). The ALJ in this case performed the required five-step evaluation and determined: (I) that the Plaintiff had not engaged in substantial gainful employment since her stroke; (ii) that Plaintiff's conditions – either individually or in combination – were considered "severe" under §§ 404.1520© and 416.920(b); (iii) that Plaintiff's mild stroke residuals – either alone or in combination with her other impairments – did not meet or medically equal one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1; (iv) that Plaintiff's impairments prevented her from doing her past relevant work; and (v) that Plaintiff retained residual functional capacity ("RFC") to perform jobs that exist in significant numbers in the national economy.

In step five of the sequential evaluation, the burden of proof shifts to the Commissioner to show that there is other gainful employment in the national economy that the claimant could perform considering the claimant's RFC, age, and past work experience. 20 C.F.R. § 404.1520(f); see Carroll v. Secretary of Health & Human Serv., 705 F.2d 638, 642 (2d Cir. 1983). Where there exists a combination of exertional and nonexertional limitations, an ALJ must evaluate whether the occupational base for exertional work is eroded by the nonexertional limitations. SSR 83-14; see also Bapp v. Bowen, 802 F.2d 601 (2d Cir. 1986). Pursuant to the regulations, the Commissioner is ultimately responsible for determining whether an individual meets the statutory definition of disability. 20 C.F.R. § 404.1527(e)(1).

As discussed in section II-B of this decision, the ALJ's findings adverse to the Plaintiff in steps (iii) and (v) of the evaluation process [that (iii) Plaintiff's conditions did not equal a listed impairment, and (v) that significant numbers of jobs existed in this region that Plaintiff could perform] are both supported by substantial evidence in the record as a whole.

2. The Treating Physician Rule

The Commissioner of Social Security has the authority to regulate the nature, extent, and manner of taking and furnishing evidence in order to establish the right to Social Security disability benefits. 42 U.S.C 405(a). In accordance with this authority, the Social Security Administration has chosen to give evidentiary weight to the opinions of treating physicians in disability cases. 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2) (concerning OASDI and SSI payments respectively).

Both of the above regulations outline the "treating physician rule" with the following identical text:

> Generally, we give more weight to opinions from your treating sources ... If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply [various factors] in determining the weight to give the opinion.

Id. These regulations also state that claimants will receive explanations, or "good reasons," for the weight assigned to a treating physician's opinion. Id. The factors that an ALJ must

apply when a treating physician's opinion is not given controlling weight include: "(I) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other relevant factors." Schaal v. Apfel, 134 F.3d 496, 503 (2d Cir. 1998) (citing §§ 404.1527(d)(2) and 416.927(d)(2)).

Omission by the ALJ of the "treating physician rule" analysis on the face of his opinion does not, however, always require remand for further proceedings. See Halloran v. Barnhart, 362 F.3d 28, 31-32 (2d Cir. 2004). This is particularly the case when the treating physician's opinion is inconsistent with the other substantial evidence in the record, such as the opinions of other medical experts. See Id. In Halloran, the Second Circuit was displeased with the ALJ, stating, "The ALJ's opinion denying disability benefits ... does not assist our review or generate much confidence in the result. [I]t is unclear on the face of the ALJ's opinion whether the ALJ considered (or even was aware of) the applicability of the treating physician rule." Id. Ms. Halloran had argued that, because the ALJ's decision denying benefits did not include an analysis of the treating physician's opinion, remand was required. See id. at 31. Nevertheless, the Court of Appeals chose to undertake "a searching review of the record to assure [that] Halloran [had] received the rule's procedural advantages" and concluded that "the substance of the treating physician rule was not traversed." Id. at 32. The Court of Appeals therefore

upheld the District Court's affirmance of the ALJ's decision. Id. at 33.

It should be noted, however, that the Halloran court put the Social Security Administration on notice, stating, "we emphasize that under the regulations, the Commissioner is required to provide "good reasons" for the weight she gives to the treating source's opinion. This requirement greatly assists our review of the Commissioner's decision and "let[s] claimants understand the disposition of their cases."" Id. at 32-33 (citing Snell v. Apfel, 177 F.3d 128, 134 (2d Cir. 1999) and quoting Schaal, 134 F.3d at 505). The Halloran court continued, "We do not hesitate to remand when the Commissioner has not provided "good reasons" for the weight given to a treating physician's opinion and we will continue remanding when we encounter opinions from ALJs that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion." Id.

Therefore, in the instant case, this court recognizes that the Commissioner is required to give "good reasons" when discounting a treating physician's opinion. Once an ALJ declines to give a treating physician's opinion controlling weight, he should then address the §§ 404.1527(d) and 416.927(d) factors. Failure to do so impedes the review process and, in the future, may result in remand. However, this court finds that (I) the ALJ's decision was supported by substantial evidence and (ii) the substance of the treating physician rule was not traversed.

3. Evaluating Credibility of Claimant Testimony

An ALJ must consider a claimant's subjective complaints of pain and other limitations when making a determination of the claimant's residual functional capacity ("RFC"). 20 C.F.R. § 404.1529; SSR 96-7p. An ALJ is not permitted to find a claimant incredible solely because the severity of her subjective complaints is not supported by objective medical evidence. Id. However, the ALJ may evaluate the credibility of a claimant together with the medical findings and other evidence in determining the true extent of the disability alleged by the claimant. Pietrunti v. Director, 119 F.3d 1035, 1042 (2d Cir. 1997). As discussed in section II-B of this decision, the ALJ's determination that Plaintiff was "not totally credible" is supported by substantial evidence in the record as a whole.

4. The Social Security Appeals Council's Ability to Remedy an ALJ's Legal Error

If a claimant believes an ALJ's decision to be erroneous, the claimant may file a request for review with the Social Security Appeals Council. 20 C.F.R. §§ 404.967 and 416.1467. The Appeals Council is not bound by an ALJ's findings of fact, but is free to independently weigh the evidence and arrive at its own findings and conclusions. Oldham v. Sec. of Health and Human Serv., 718 F.2d 507 (1st Cir. 1983). "On appeal from or review of the initial decision, the agency has all the powers which it would have in making the initial decision." 5 U.S.C. § 557(b); see also Morningside Renewal Council, Inc. v. United States Atomic Energy

Comm'n, 482 F.2d 234, 239 (2d Cir. 1973). A "final decision" on a benefits application is rendered when the Appeals Council either considers the application on the merits or declines a claimant's request for review, and not simply when the ALJ issues his decision. Pollard v. Halter, 377 F.3d 183, 191 (2d Cir. 2004).

The final decision presently before this court includes the determinations made by both the ALJ in his decision and the Appeals Council in its denial of review. Though the Appeals Council's decision took the form of a denial of review, the Council clearly reviewed Dr. Perry's notes before it chose to discount her opinion (Tr. 6). After a searching review of the record, this court finds that substantial evidence supports the Appeals Council's determination that Dr. Perry's notes were internally inconsistent.

**B. Discussion of the Evidence**

Plaintiff claims that she became unable to work on February 11, 2002 due to the neurological impairments of a stroke (Tr. 39). She states that her disabilities are memory loss, depression, back pain, and other stroke residuals (Compl. at 1).

In performing the SSA's five-step disability evaluation, the ALJ made findings adverse to the Plaintiff in steps three and five of the process (Tr. 14-16). Specifically, the ALJ found that (iii) Plaintiff's conditions did not equal a listed impairment and (v) significant numbers of jobs existed in this region that Plaintiff could perform. Both determinations are supported by substantial evidence in the record as a whole.

In the third step, the ALJ looked at 20 C.F.R. Pt. 404, Subpt. P, App. 1 and found that the Plaintiff's stroke did not meet or equal a "Central Nervous System Vascular Accident" as defined in Section 11.04:

> 11.04 Central nervous system vascular accident. With one of the following more than 3 months post-vascular accident:
>
> A. Sensory or motor aphasia resulting in ineffective speech or communication; or
>
> B. Significant and persistent disorganization of motor function in two extremities, resulting in sustained disturbance of gross and dexterous movements, or gait and station (see 11.00C).

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 11.04. Section 11.00C clarifies 11.04B:

> C. Persistent disorganization of motor function in the form of paresis or paralysis, tremor or other involuntary movements, ataxia and sensory disturbances (any or all of which may be due to cerebral cerebellar, brain stem, spinal cord, or peripheral nerve dysfunction) which occur singly or in various combination, frequently provides the sole or partial basis for decision in cases of neurological impairment. The assessment of impairment depends on the degree of interference with locomotion and/or interference with the use of fingers, hands, and arms.

Id. at § 11.00C. None of the doctors in the record noted the degree of sensory aphasia, motor aphasia, or persistent disorganization of motor function needed for the Plaintiff's conditions to equal an 11.04 "central nervous system vascular accident." Dr. Chima noted that Plaintiff had "almost totally recovered from her stroke" when he examined her on May 29, 2002 (Tr. 106). The March 4, 2002 examination at the Geneva B. Scruggs Community Health Center ("Scruggs Center") and Dr. Dickinson's

evaluation on December 16, 2002 both noted that Plaintiff's speech was "adequate and clear" (Tr. 121; Tr. 197). Good motor function was recorded in one form or another by the Scruggs Center at least five times from March 4, 2002 through July 2, 2002 (Tr. 192, 193, 194, 196, 197). Even Dr. Jesslyn Perry, the physician upon who's opinion the Plaintiff bases much of her argument, noted Plaintiff's adequate motor skills and nerve function (Tr. 181-91).

In evaluating the Plaintiff's other impairments, the ALJ determined that Plaintiff's memory loss, depression, and borderline intellectual functioning did not meet the requirements of Sections 12.02, 12.04, or 12.05 (Tr. 15-16). Plaintiff denied depressive symptoms in her December 16, 2002 evaluation (Tr. 119) and the battery of tests that Dr. Dickinson performed indicated that Plaintiff had adequate, if poor, memory and intellect (Tr. 121-22). Dr. Dickinson recommended "vocational rehabilitation should claimant be unable to return to her former job," (Tr. 123) indicating that he did not think her unable to perform any substantial gainful work.

Finally, in performing the fifth step of the sequential disability evaluation, the ALJ found that significant numbers of jobs existed in this region that Plaintiff could perform (Tr. 21). This conclusion is supported by the testimony of the vocational expert (Tr. 292-298) as well as the medical testimony in the record which, when taken as a whole, shows that Plaintiff arguably retained the RFC to perform light work.

Immediately after her stroke, examinations at Sisters of Charity Hospital showed full range of motion in Plaintiff's extremities, intact sensory examination, largely normal strength, normal coordination, and her eyes were normally situated (Tr. 78, 84). Medications were prescribed per the Plaintiff's hematology consultation, but her hospital stay was relatively unremarkable (Tr. 78-105).

Plaintiff had a number of physicians over the course of her treatment at the Scruggs Community Health Center and, as noted above, the majority of the records from Scruggs indicate that she recovered quickly and almost completely from her February 2002 stroke. The Plaintiff nevertheless chooses to argue that an October 8, 2002 document signed by Dr. Jesslyn Perry requires this court to remand for further proceedings (Pl.'s Mem. at 8; Pl.'s Reply Mem. at 1-5; Tr. 226 *repeated at* Tr. 265). This document was a one-page Erie County Department of Social Services Medical Employability Evaluation in which Dr. Perry stated that the Plaintiff would be unemployable for "6 months" (Tr. 226 and 265). Although Dr. Perry does not appear to have had an extensive doctor/patient relationship with the Plaintiff prior to filling out this form, Dr. Perry did thereafter consistently examine and treat the Plaintiff until March 31, 2003 (Tr. 181-91).

In Dr. Perry's first examination, dated August 9, 2002, she noted the Plaintiff's medical insurance status and that Plaintiff was "no longer on disability" (Tr. 191). Dr. Perry's next examination, dated September 9th, registered Plaintiff's complaints

about difficulty walking and fear of "mini strokes" (Tr. 190), but Dr. Perry's assessment that day concluded that Plaintiff was able to "heel to toe walk" with no noted difficulty. Id. Dr. Perry again examined Plaintiff on October 7th and observed good strength, intact cranial nerves, and good reflexes (Tr. 189). Examinations in November of 2002 noted problems such as heartburn, level of cigarette smoking, and headaches (Tr. 186-88). Dr. Perry yet again observed intact reflexes and steady gait (Tr. 185) and, on January 30, 2003, Plaintiff stated a desire to return to work because her headaches were "not as bad" (Tr. 184). On March 17, 2003, Plaintiff arrived at the Scruggs Center smelling of marijuana and, that day, received a "note to return to work" (Tr. 183). Plaintiff also tested positive for marijuana but denied using the drug when asked by Dr. Perry (Tr. 185). On March 31, 2003, the Plaintiff then admitted to Dr. Perry that she used marijuana habitually, smoking on average "twice per week" (Tr. 181).

The Plaintiff argues that her testimony and subjective claims of limitation are entitled to substantial weight given her "good work history" (Pl.'s Reply Mem. at 5-6). But Plaintiff testified at her hearing that she had stopped smoking marijuana after her stroke (Tr. 281) and this is clearly against the weight of evidence on file from the Scruggs Center (Tr. 181, 183, 185). Also, the Plaintiff's fluctuating earnings from 1987 to 2002 never remotely approached the levels required to claim that she earned $6,400.00 in the first five weeks of 2002 (Tr. 48-51). Nevertheless, when the ALJ asked her about this at the hearing, the Plaintiff testified that she had not worked after her stroke and any spike in

earnings was due to "overtime" (Tr. 280-81). Given her questionable testimony, the ALJ could reasonably conclude that Plaintiff's subjective claims of limitation were less than credible.

Based upon testimony at the hearing and medical evidence in the record, the ALJ and Appeals Council determined that the Plaintiff was not "under a disability," that Dr. Perry's statement on October 8, 2002 was inconsistent with her own records and the opinions of other doctors, and that the Plaintiff retained the RFC to perform light work. Given the weight of medical evidence and the testimony of the vocational expert (Tr. 292-298), substantial evidence supports the Commissioner's conclusion that significant numbers of jobs existed in this region that Plaintiff could perform. Therefore, this court finds that the final decision of the Commissioner denying Plaintiff's application for disability benefits was supported by substantial evidence in the record as a whole.

## Conclusion

This court finds that the Commissioner's decision was made in accordance with the applicable law and was supported by substantial evidence. Therefore, I hereby grant judgment on the pleadings in favor of the defendant.

ALL OF THE ABOVE IS SO ORDERED.

s/Michael A. Telesca
MICHAEL A. TELESCA
United States District Judge

Dated: Rochester, New York
June 8, 2007